## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAE HORSEY,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>SETH D. HARRIS, Acting Secretary, Department of Labor,<br><br>　　Defendant. | Civil No.  12-1457 (JDB) |

### MEMORANDUM OPINION

Plaintiff Mae Horsey, proceeding pro se, brings this action against defendant Seth D. Harris in his capacity as Acting Secretary of the U.S. Department of Labor ("Department").[1] The events giving rise to this case stem from Horsey's employment at the Department.  Her complaint, liberally construed, alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq.; violations of the merit system principles and prohibited personnel practices, 5 U.S.C. §§ 2301 and 2302; and other allegedly unlawful actions by the Department.

Before the Court is the Department's motion to dismiss for failure to state a claim and, in the alternative, for a more definite statement.  For the reasons set forth below, the Court will grant the Department's motion to dismiss.

---

[1] The complaint originally named as defendant Hilda Solis in her capacity as Secretary of the Department of Labor.  Pursuant to Federal Rule of Civil Procedure 25(d), the current Acting Secretary Seth D. Harris is automatically substituted.

## BACKGROUND

### I.    Factual Background

Horsey is an African-American woman who was employed by the Department in the Office of Executive Resources and Personnel Security. See Ex. B to Def.'s Mot. to Dismiss [Docket Entry 6-2] at 4 (Jan. 4, 2013).[2]  In April 2006, Andrea Burckman became Horsey's immediate supervisor.  See id.  Most of Horsey's complaints in this matter derive from her experience working under Burckman.  Horsey's troubles with Burckman began when Burckman gave Horsey a performance evaluation rating of "Effective" for Fiscal Year 2006, rather than the "Exemplary" rating which Horsey thought she deserved.  See Ex. 1 to Compl. [Docket Entry 1-1] at 1, 9 (Aug. 31, 2012).  Horsey unsuccessfully attempted to challenge her rating with other Department management.  See Compl. [Docket Entry 1] at 3 (Aug. 31, 2012).

Burckman began implementing new office policies that caused further friction between her and Horsey.  For example, in September 2006, Burckman started requiring one staff member to provide office coverage until 5:00 p.m. each night.  See Ex. B to Def.'s Mot. to Dismiss at 4-5. Staff were assigned this responsibility on a rotating basis and were advised to manage their schedules so that they did not accumulate credit hours in connection with performing office coverage.  See id.[3] Horsey asked to be exempted from the 5:00 p.m. office coverage obligation because she paid to commute home in a vanpool which left at 4:15 p.m., and Burckman denied the request.  See Ex. D to Def.'s Mot. to Dismiss at 2.

---

[2] Page numbers for exhibits reflect Electronic Case Filing system page numbers.  Page numbers for the complaint, the Department's motion, and the parties' memoranda reflect the page numbers shown at the bottom of those documents.

[3] Credit hours allowed employees to accrue extra leave by working more than eight hours in a day.  See Ex. D to Def.'s Mot. to Dismiss [Docket Entry 6-4] at 2 (Jan. 4, 2013).

Burckman also made organizational changes.  Based on the needs of the office, Team Leader positions were abolished.  <u>See</u> Ex. 2 to Compl. [Docket Entry 1-2] at 2 (Aug. 31, 2012). As a result of this decision, Horsey's position was reassigned from Lead Human Resources Specialist to Human Resources Specialist in November 2006, though her grade level (GS-14) remained the same.  <u>See</u> Ex. 3 to Compl. [Docket Entry 1-3] at 8 (Aug. 31, 2012).  Burckman additionally reorganized the work distribution of the office in an effort to improve consistency and accountability.  <u>See</u> Ex. B to Def.'s Mot. to Dismiss at 6-7.

After discovering that staff members were accumulating credit hours that she did not believe their workloads necessitated, Burckman informed staff in January 2007 that they needed prior approval from her in order to properly earn credit hours.  <u>See</u> <u>id.</u> at 7; Ex. D to Def.'s Mot. to Dismiss at 2.  Burckman further advised staff that failure to comply with this guidance could result in disciplinary action.  <u>See</u> Ex. D to Def.'s Mot. to Dismiss at 2-3.  Horsey generally alleges that her workload was excessive, which, combined with the policies on 5:00 p.m. office coverage and pre-approval of credit hours, resulted in her working numerous hours uncompensated.  <u>See</u> Compl. at 4-5.

In one pay period in January 2007, Horsey recorded 3.25 credit hours without seeking prior approval from Burckman.  <u>See</u> Ex. B to Def.'s Mot. to Dismiss at 7.  Burckman altered Horsey's timesheet, but Horsey's credit hours were ultimately restored.  <u>See</u> <u>id.</u> at 7-8.  However, Burckman warned Horsey that she would be disciplined if she earned any unapproved credit hours again.  <u>See</u> <u>id.</u> at 8.

Horsey nevertheless earned an additional two hours of credit time in March 2007, which she recorded as compensatory time.  <u>See</u> <u>id.</u>; Ex. 5 to Compl. [Docket Entry 1-5] at 2 (Aug. 31, 2012).  Consistent with her prior warnings, Burckman issued Horsey an official letter of

reprimand on March 12, 2007.  <u>See</u> Ex. 5 to Compl. at 3-4.  The letter reprimanded Horsey for

obtaining credit hours without prior approval and for unacceptable behavior in the office.  <u>See</u> <u>id.</u>

Burckman gave Horsey a performance rating of "Minimally Satisfactory" for Fiscal Year

2007.  <u>See</u> Ex. 2 to Compl. at 1; Ex. H to Def.'s Mot. to Dismiss [Docket Entry 6-8] at 3 (Jan. 4,

2013).  Horsey again tried to protest the rating to other Department management but did not

succeed.  <u>See</u> Compl. at 6; Ex. F to Def.'s Mot. to Dismiss [Docket Entry 6-6] at 5-6 (Jan. 4,

2013).

On September 19, 2007, Burckman proposed placing Horsey on a five-day suspension for

failure to follow instructions and for inappropriate behavior.  <u>See</u> Ex. 6 to Compl. [Docket Entry

1-6] at 1 (Aug. 31, 2012).  Burckman noted that Horsey often failed to perform the 5:00 p.m.

office coverage and cited six specific examples of when Horsey was assigned to provide

coverage but refused and left early.  <u>See</u> Ex. F to Def.'s Mot. to Dismiss at 8.  Burckman also

noted specific incidents of Horsey's unprofessional and disrespectful conduct towards her.  <u>See</u>

Ex. 6 to Compl. at 1-2.  Horsey was ultimately given a two-day suspension.  <u>See</u> Ex. F to Def.'s

Mot. to Dismiss at 6.

In a related incident, Horsey recorded on her timesheet that she served five hours a day

when she was on suspension.  <u>See</u> Compl. at 12; Ex. F to Def.'s Mot. to Dismiss at 9.  Burckman

and Jerry Lelchook (Horsey's second level supervisor) directed her to change the hours served to

eight based on Office of Personnel Management and Department of Labor rules that required

suspensions to be served on an eight-hour per day basis.  <u>See</u> Ex. F to Def.'s Mot. to Dismiss at

5, 9.

On December 27, 2007, Burckman and Lelchook informed Horsey that, due to a conflict

of interest, they declined to recognize the Local 12 Vice President as Horsey's representative in

discussions about her performance appraisal.  See id. at 6.  Horsey claims that she said that her representative "was not working on behalf of the Union" and that she was also denied a representative of her choice in the Equal Employment Opportunity ("EEO") process, which is discussed below.  See Compl. at 11.

**II.      Procedural Background**

Horsey initially contacted the EEO office regarding her workplace troubles on January 18, 2007.  See Ex. B to Def.'s Mot. to Dismiss at 9.  She filed a formal EEO complaint against the Department on April 24, 2007.  See Def.'s Mot. to Dismiss [Docket Entry 6] at 3 n.1 (Jan. 4, 2013).   The following claims were accepted for investigation: whether the Department discriminated against Horsey on the basis of race (African-American), age (over forty), gender (female), disability (physical leg injury), and in reprisal for prior protected EEO activity when: (1) she was given a performance rating of "Effective" for Fiscal Year 2006; (2) she was allegedly assigned twice the workload as the other GS-14 Human Resource Specialist in the office; (3) she was allegedly required to work an additional two hours every two-week pay period without compensation for related out-of-pocket expenses; (4) her timesheet was changed to remove reportedly earned credit hours and Burckman threatened to reprimand her if she worked more than eighty hours during a pay period in the future; (5) her request for a reasonable accommodation was allegedly denied; (6) her request for leave under the Family Medical Leave Act was allegedly denied; and (7) she was given an official letter of reprimand on March 12, 2007.  See id.; Ex. A to Def.'s Mot. to Dismiss [Docket Entry 6-1] at 1 (Jan. 4, 2013).  The Equal Employment Opportunity Commission ("EEOC") administrative judge granted summary judgment to the Department.  See Ex. B to Def.'s Mot. to Dismiss at 14.  Horsey's third claim was dismissed pursuant to 29 C.F.R. § 1614.107(a)(2) for untimely EEO counselor contact, see

id. at 12-13; her fourth claim was dismissed pursuant to 29 C.F.R. § 1614.107(a)(1) and (5) for failure to state a claim, see id. at 13; and the administrative judge found no discrimination or retaliation on the remaining claims, see id. at 12-14.

The Department adopted the administrative judge's decision as a final order. See Ex. C to Def.'s Mot. to Dismiss [Docket Entry 6-3] (Jan 4. 2013). Horsey appealed, and the EEOC affirmed the final order. See Ex. D to Def.'s Mot. to Dismiss at 1, 10. The EEOC mailed its decision affirming summary judgment to Horsey on March 16, 2012. The EEOC's letter explicitly advised her that she had the right to sue in federal court within ninety days from the date she received the decision. See id. at 11-12.

Horsey filed another formal EEO complaint against the Department on November 28, 2007. See Def.'s Mot. to Dismiss at 3 n.2. The following claims were accepted for investigation: whether the Department discriminated against Horsey on the basis of race (African-American), age (over forty), gender (female), and in reprisal for prior protected EEO activity when: (1) she was given a performance rating of "Minimally Satisfactory" for Fiscal Year 2007; (2) she was notified that she would be suspended from service for two days; (3) she was informed that she would not be entitled to a representative of her choice on December 27, 2007 and January 15, 2008; (4) a management official encouraged her to withdraw her EEO complaint;[4] and (5) she was directed to amend her timesheet to reflect her suspension for two eight-hour days. See id.; Ex. E to Def.'s Mot. to Dismiss [Docket Entry 6-5] at 1 (Jan. 4, 2013). The EEOC administrative judge found no discrimination or retaliation and granted summary judgment to the Department. See Ex. F to Def.'s Mot. to Dismiss at 7-11.

---

[4] Horsey met with Lelchook on January 9, 2008 to discuss resolution of her EEO complaint. See Ex. F to Def.'s Mot. to Dismiss at 6. According to Horsey, Lelchook tried to "strong arm" her into dropping the complaint during this meeting. See id. at 11; Compl. at 10.

As with the prior complaint, the Department adopted the administrative judge's decision as a final order.  See Ex. G to Def.'s Mot. to Dismiss [Docket Entry 6-7] (Jan. 4, 2013).  Horsey appealed, and the EEOC affirmed the final order.  See Ex. H to Def.'s Mot. to Dismiss at 1.  The EEOC mailed its decision affirming summary judgment to Horsey on May 24, 2012, and again explicitly advised her that she had the right to sue in federal court within ninety days from the date she received the decision.  See id. at 6-7.

Horsey filed this lawsuit on August 31, 2012.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact.  See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed

factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

The pleadings of pro se litigants are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (citation and internal quotation marks omitted). "[A]lthough a court will read a pro se plaintiff's complaint liberally," such a complaint nevertheless "must present a claim on which the Court can grant relief." Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

## ANALYSIS

The exact nature of Horsey's legal claims is difficult to discern, but the Court has endeavored to give her pro se filings the generous interpretation to which they are entitled. See Erickson, 551 U.S. at 94. Horsey's claims can be grouped into two categories: discrimination-related claims (encompassing discrimination and retaliation) and claims based on allegedly unlawful personnel actions.

### I.      All claims raised in the EEO proceedings are time-barred.

Horsey's complaint can be read as reasserting some of the discrimination and retaliation claims that she previously brought in her two EEO proceedings. Although Horsey does not

explicitly allege discrimination here, her complaint focuses largely on the same incidents that were investigated in the EEO proceedings, and she notes that she "was forced to file two EEO complaints against the discriminatory actions taken against [her]" and makes passing references to race and gender.[5]  See Compl. at 12.  However, because Horsey neglected to file this lawsuit within ninety days of receiving the EEOC's final decisions on appeal, any claims raising issues addressed in the EEO proceedings are untimely and hence will be dismissed.

A federal employee who has filed an EEO complaint has different options for pursuing a civil action in federal court under Title VII or the ADEA.  See 29 C.F.R. § 1614.407.  After the agency's final action following administrative adjudication, the employee can either (1) bypass an appeal with the EEOC and file suit in court within ninety days of receipt of the agency's final action or (2) file an appeal with the EEOC and file suit in court within ninety days of receipt of the EEOC's final decision on appeal.  See id.[6]

These deadlines for filing suit on EEO claims are strictly enforced.  See, e.g., Woodruff v. Peters, 482 F.3d 521, 525 (D.C. Cir. 2007).  "Courts . . . will dismiss a suit for missing the deadline by even one day."  McAlister v. Potter, 733 F. Supp. 2d 134, 142 (D.D.C. 2010).  The mere fact that a plaintiff is representing herself "does not render [her] immune from the ninety-day requirement."  See Anderson v. Local 201 Reinforcing Rodmen, 886 F. Supp. 94, 97

---

[5] For example, Horsey alleges that "[t]he White Female HR Specialists, a Black HR Assistant, two White Security Specialists, and even Ms. Burckman (White) were allowed the ability to be compensated for working overtime or compensatory/credit hours," while she was "constantly denied and forced to perform a tremendous amount of work uncompensated in spite of the Federal regulations and agency policy/guidance."  See Compl. at 5.

[6] Alternatively, a federal employee may sue directly in federal court on an ADEA claim if he or she provides at least thirty days advance notice to the EEOC.  See 29 C.F.R. § 1614.201. Because Horsey chose to bring her ADEA claims in both EEO proceedings and did not give advance notice of any additional ADEA claims, that process is not applicable here.  See Ex. D to Def.'s Mot. to Dismiss at 1; Ex. F. to Def.'s Mot. to Dismiss at 4.

(D.D.C. 1995); see also Smith v. Dalton, 971 F. Supp. 1, 2-3 (D.D.C. 1997) (barring a pro se litigant who missed the ninety-day deadline by one day).

When the Department adopted the administrative judge's finding in favor of the Department on both of Horsey's EEO complaints, it expressly apprised her of her rights to file a civil action.  Horsey elected in both EEO proceedings to pursue an appeal with the EEOC.  Horsey thus had ninety days from the dates she received the EEOC's final decisions on appeal to file suit in federal court.  See 29 C.F.R. § 1614.407(c).

Although the date that Horsey received the mailed decisions is not stated in her complaint, the Court will assume that she received both decisions within five days from the dates they were mailed.[7]  See Anderson, 886 F. Supp. at 97 (noting that courts apply a three- or five-day presumption from date of mailing); see also McAlister, 733 F. Supp. 2d at 143 (granting a "generous" five-day presumption).  The final decision on appeal regarding the first EEO matter was mailed to Horsey on March 16, 2012.  It expressly advised her of her right to sue within ninety days.  Allowing her five days to receive the decision, her deadline for filing suit was June 19, 2012.  The final decision on appeal regarding the second EEO matter was mailed to Horsey on May 24, 2012.  It also expressly advised her of her right to sue within ninety days.  Allowing her five days to receive the decision, her deadline for filing suit was August 27, 2012.  Horsey did not file the instant case – which contemplates claims asserted in both EEO proceedings – until August 31, 2012.  She therefore missed both strictly enforced deadlines.[8]

_____

[7] The EEOC's decisions on appeal informed Horsey that "[f]or timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed."  See Ex. D to Def.'s Mot. to Dismiss at 12; Ex. H to Def.'s Mot. to Dismiss at 7.

[8] In her opposition, Horsey additionally complains about the manner in which the administrative judge handled her first EEO complaint.  See Pl.'s Opp'n to Mot. to Dismiss [Docket Entry 8] at 2-3 (Apr. 22, 2013).  In particular, she stresses that she never received a copy of the Department's motion for summary judgment.  See id. at 3.  This issue, as well as several related

Horsey has had two opportunities to address the Department's timeliness argument and has declined to do so. In her opposition to the Department's motion to dismiss, she claims to have "complied with all filing procedures according to the guidance provided to [her]," and "[pleads] to the Court to not dismiss [her] case." See Pl.'s Opp'n to Mot. to Dismiss at 1. Her surreply argues that the government's desire to dispose of the case on timeliness grounds illustrates a "lack of compassion, lack of integrity, and blatant disregard to uphold all Federal regulations and internal policies for all, not some, Federal employees." See Pl.'s Surreply [Docket Entry 10] at 1-2 (June 4, 2013). But nowhere does Horsey even attempt to explain her delay in filing this suit. Even if these statements are construed as requests for equitable tolling, they are wholly lacking in explanation and hence fail to demonstrate that this is one of the "extraordinary and carefully circumscribed instances" justifying equitable tolling. See Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988); see also Wiley v. Johnson, 436 F. Supp. 2d 91, 96 (D.D.C. 2006) ("The burden of pleading and proving any equitable excuse for failure to meet the ninety-day filing limit falls wholly upon the plaintiff.").

Both final EEOC decisions on appeal made clear that Horsey had ninety days to file a lawsuit. Because Horsey failed to comply with the appropriate deadlines, any claims that were raised in her EEO proceedings must be dismissed.[9]

---

complaints about the administrative judge's actions, were addressed in Horsey's appeal to the EEOC. See Ex. D to Def.'s Mot. to Dismiss at 7. The EEOC noted that Horsey did not dispute that her representative received the Department's motion, and found that Horsey failed to establish that she was "unfairly denied the opportunity to oppose summary judgment" or that the administrative judge abused his discretion. See id. at 7 & n.1. Because Horsey did not pursue her claims regarding the administrative judge's actions within the ninety-day deadline, they, too, are untimely.

[9] Horsey's claim concerning her reassignment from Lead Human Resources Specialist to Human Resources Specialist was not accepted for investigation in the first EEO proceeding; it was dismissed for untimely counselor contact because more than forty-five days passed between the reassignment and Horsey's initial contact with an EEO counselor. See Ex. A to Def.'s Mot. to

## II.    **The Court lacks jurisdiction over Horsey's personnel action claims.**

Although Horsey has indicated that this is an employment discrimination action, her complaint, as well as her opposition and surreply, in fact contain little mention of discrimination. Rather, the thrust of Horsey's complaint is that the Department took a series of adverse personnel actions against her, in violation of the merit system principles, federal regulations, and internal Department policy and guidance.  See Compl. at 1; see also Civil Cover Sheet [Docket Entry 1-8] (Aug. 31, 2012).   Because personnel challenges of the type Horsey seeks to bring are not actionable in this Court, they will be dismissed.

The Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered portions of 5 U.S.C.), "'prescribes in great detail the protections and remedies' applicable to adverse personnel actions, 'including the availability of administrative and judicial review.'"  Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 448 (D.C. Cir. 2009) (quoting United States v. Fausto, 484 U.S. 439, 443 (1988)).  The D.C. Circuit has stressed that the CSRA regime is both "comprehensive and exclusive."  See Grosdidier v. Chairman, Broad. Bd. of Governors, 560 F.3d 495, 497 (D.C. Cir. 2009).  Aside from statutes that expressly create an external remedy – such as Title VII and other anti-discrimination laws – the CSRA "constitutes the remedial regime for federal employment and personnel complaints."  See Nyunt, 589 F.3d at 448 (citations omitted).  "Federal employees may

---

Dismiss at 1 (noting that the effective date of the reassignment was November 12, 2006 and that Horsey made initial contact on January 18, 2007).  Because that decision was correct under 29 C.F.R. § 1614.105(a)(1), Horsey cannot maintain a discrimination claim based on her reassignment.  Horsey also alleges that this reassignment was in retaliation for having filed an EEO complaint.  See Compl. at 6.  However, the record establishes that the position change in November 2006 predated Horsey's EEO activity, rendering such retaliation impossible.  See Ex. B to Def.'s Mot. to Dismiss at 9 ("[Horsey] initially contacted the EEO office on January 18, 2007 . . . .  Burckman was not aware that [Horsey] had filed an EEO claim until [Horsey] informed her via email on March 12, 2007.").

not circumvent the Act's requirements and limitations by resorting to the catchall [Administrative Procedure Act] to challenge agency employment actions." Grosdidier, 560 F.3d at 497.   And this is so "even when the [CSRA] provides no relief for the complained-of employment action."   Mahoney v. Donovan, No. 12-5016, 2013 WL 3239663, at *2 (D.C. Cir. June 28, 2013).

The CSRA protects federal employees against certain enumerated "prohibited personnel practices."   See 5 U.S.C. § 2302; Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1432 (D.C. Cir. 1996).   Such practices include taking any personnel action that violates the "merit system principles" contained in 5 U.S.C. § 2301.   See 5 U.S.C. § 2302(b)(12); Weaver, 87 F.3d at 1432. Under the CSRA, prohibited personnel practice claims must be brought to the Office of Special Counsel; "more serious infractions are appealable to the Merit Systems Protection Board, with further review in the Courts of Appeal."   See Hubbard v. EPA, 809 F.2d 1, 5 (D.C. Cir. 1986), aff'd in part on other grounds sub nom. Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988) (en banc) (per curiam); see also Mahoney, 2013 WL 3239663, at *1 ("Other personnel actions that are alleged to violate the merit-systems principles of the Civil Service Reform Act or otherwise to be improperly motivated – what the Act calls 'prohibited personnel practices' – are to be investigated by the Office of Special Counsel." (citations omitted)).   Prohibited personnel practice claims may not be brought directly in district court.   See Mahoney, 2013 WL 3239663, at *1, *3-4; Hubbard, 809 F.2d at 5 (stating that "CSRA deprives the district court of jurisdiction to review prohibited personnel practices").

Throughout her complaint, Horsey alleges that the Department engaged in prohibited personnel practices and violated the merit system principles, sometimes invoking specific practices and principles while at other times simply asserting violations as a general matter.   To

drive home the nature of her claims, Horsey has even attached copies of the governing statutes, 5 U.S.C. §§ 2301 and 2302.  See Compl. at 15-24.   However, Horsey's prohibited personnel practice claims (which encompass her merit system principles claims) are precluded by the CSRA; hence, this Court lacks jurisdiction to consider them.  See Mahoney, 2013 WL 3239663, at *4; Hubbard, 809 F.2d at 5.

Horsey complains as well that the Department violated federal statutes and regulations and the Department's internal policies and guidance.  She claims, for example, that the 5:00 p.m. office coverage obligation and the requirement that credit hours be pre-approved conflicted with the Department's own policy and a federal statute regarding flexible work schedules.  See Compl. at 7-8.  She also alleges that Burckman violated federal regulations when assessing her performance for Fiscal Year 2006 and designing her performance plan for Fiscal Year 2007.  See id. at 2-3.  But claims of this sort are, in essence, challenges to personnel actions.  See 5 U.S.C. § 2302(a)(2)(A) (defining "personnel action" to include any "significant change in duties, responsibilities, or working conditions").  As such, they must be pursued in accordance with the elaborate scheme set forth in the CSRA.  See, e.g., Nyunt, 589 F.3d at 448-49.  To allow otherwise would "impermissibly frustrate the exhaustive remedial scheme of the Act by permitting, for [workplace complaints like Horsey's], an access to the courts more immediate and direct than the statute provides with regard to major adverse actions."  See Mahoney, 2013 WL 3239663, at *3 (alteration and internal quotation marks omitted).  And, of course, it does not matter that no relief would be available to Horsey under the CSRA on her challenges.  Id. at *2.

Because this Court lacks jurisdiction to review the kind of personnel action claims that Horsey asserts in this case, granting her an opportunity to provide a more definite statement of these claims would be futile.  Hence, they will be dismissed.[10]

**CONCLUSION**

For these reasons, defendant's motion to dismiss will be granted.  A separate order will be issued on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: July 16, 2013

---

[10] Horsey also alleges that the various personnel actions of which she complains created a hostile work environment.  See Compl. at 1.  Although the CSRA preserves the rights of federal employees to bring suit under Title VII and other federal anti-discrimination laws, and thus does not necessarily preclude a hostile work environment claim here, see Mahoney, 2013 WL 3239663, at *2 n.4, Horsey has not shown that she exhausted administrative remedies on this claim, as is required, see Hamilton v. Geithner, 666 F.3d 1344, 1349 (D.C. Cir. 2012).  Moreover, Horsey fails to state a hostile work environment claim because her allegations, even if accepted as true, do not describe incidents that were "sufficiently severe or pervasive to alter the conditions of [Horsey's] employment and create an abusive working environment."  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted).  To the extent Horsey seeks to bring an independent hostile work environment claim, then, that claim will be dismissed as well.